**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

MICHAEL ROBERTS,                               )
                                               )
                    Plaintiff,                 )
                                               )
v.                                             )    Case No. 25-cv-218-DES
                                               )
CITY OF ATOKA, OKLAHOMA,                       )
DRAKE SMITH, and                               )
KODY SIMPSON,                                  )
                                               )
                    Defendants.                )

<u>**OPINION AND ORDER**</u>

This matter comes before the Court on Defendant City of Atoka, Oklahoma's ("Atoka")

Motion to Dismiss Plaintiff's First Amended Complaint, pursuant to Rule 12(b)(6). (Docket No.

28). For the reasons set forth below, Atoka's Motion to Dismiss is DENIED.

**I.      Background**

On July 2, 2025, Plaintiff Michael Roberts ("Plaintiff") filed his Complaint alleging

violations of the United States Constitution, the Oklahoma Constitution, and Oklahoma law arising

out of his traffic stop and arrest in February of 2024. (Docket. No. 2). Plaintiff filed his First

Amended Complaint on August 29, 2025. (Docket No. 20). Plaintiff's First Amended Complaint

alleges that, at or around 4:30 pm on February 25, 2024, Plaintiff was pulled over by Drake Smith

("Defendant Smith") for allegedly speeding. *Id.* at 2-3. Plaintiff provided Defendant Smith with

his license and proof of insurance as requested and remained calm and ordinary. *Id.* Plaintiff

alleges Defendant Smith returned to his patrol car to verify Plaintiff's documents, check for

warrants, and determine who owned the vehicle. *Id.* at 3. Dispatch reported to Defendant Smith

that Plaintiff had no warrants and that he owned the car. *Id.* At this time, Kody Simpson

("Defendant Simpson") arrived on the scene and, according to Plaintiff, despite finding nothing to

1

justify an arrest or an extended detention, nonetheless suggested to Defendant Smith that he perform a Standard Field Sobriety Test on Plaintiff.[1]

Plaintiff alleges Defendant Simpson asked Defendant Smith if he smelled marijuana and Defendant Smith responded he did not. *Id.* at 3. Despite this, Plaintiff alleges the two officers approached either side of Plaintiff's car and Defendant Smith asked Plaintiff to step out of the car. *Id.* at 4. Plaintiff alleges the officers did not provide a reason why Plaintiff was being asked to step out of the car, but that Defendant Smith then asked Plaintiff if he had been smoking marijuana that day to which Plaintiff responded that he does not smoke. *Id.* Plaintiff then alleges Defendant Simpson unreasonably escalated the situation by walking to the driver's side door and reaching into the vehicle to open the door. *Id.* Plaintiff, fearing for his safety, rolled up the window and stopped three quarters of the way up. *Id.* Defendant Simpson then attempted to break Plaintiff's window by slamming his hand against the glass twice. *Id.* Plaintiff requested to speak to a supervisor, but Defendant Simpson reached into the vehicle again, grabbed his pepper spray canister and "held it directly in front of Plaintiff's face and doused him in pepper spray." *Id.*

According to Plaintiff, Defendant Simpson then instructed Defendant Smith to break the driver's side window and Defendant Smith complied by using his baton. *Id.* Defendant Simpson reached through the broken window, unlocked Plaintiff's door, and "grabbed Plaintiff by only his hair and pulled him bending his body significantly and attempting to drag him out of the car but was unsuccessful due to Plaintiff's seatbelt still being on." *Id.* at 5. After unbuckling the seatbelt, Defendant Simpson "for a second time grabbed Plaintiff solely by the hair and violently tugged, twisting Plaintiff's neck downward." *Id.* After Plaintiff was removed from the vehicle he was taken to the Atoka County Jail but was not charged with any offense related to driving under the

---

[1] According to Defendant Smith, he observed Plaintiff as having glazed over eyes, slow reactions and irritation and irritability which is what led him want to perform the field sobriety test. (Docket No. 24 at 4).

influence. *Id.* Plaintiff alleges that under the circumstances, the use of violent force on Plaintiff was objectively unreasonable and excessive. *Id.* at 6.

Atoka raise three (3) issues for the Court's consideration in its Motion to Dismiss Plaintiff's First Amended Complaint: (1) whether the Court should take Judicial Notice of the body-camera footage as a public record; (2) whether Plaintiff has adequately pled a 1983 based municipal liability claim; and (3) whether Plaintiff's state law tort claims against Atoka should be dismissed. For the reasons set forth below, Atoka's Motion to Dismiss is DENIED.

## II.      Analysis

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Courts would generally embrace a liberal construction of this pleading requirement and allow complaints containing only conclusory allegations to move forward unless factual impossibility was apparent from the face of the pleadings. *Robbins v. Oklahoma* 519 F.3d 1242, 1246 (10th Cir. 2008). However, the United States Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), announced a new standard and held that to withstand a motion to dismiss, a complaint must contain enough allegations of fact to state a claim in which relief is plausible on its face. *Id* at 570. This does not mean all facts must be presented at the time of the complaint, but merely that the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Id.* at 555 (quotation omitted). Therefore, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Robbins,* 519 F. 3d at 1247. Courts are to construe the allegations of a complaint in a light most favorable to the Plaintiff; however, "the court will not

read causes of action into the complaint which are not alleged." *Arnold v. City of Tulsa, Oklahoma*, No. 09CV811, 2010 WL 3860647, at *3 (N.D. Okla. Sept. 30, 2010) (quotation omitted).

It is not enough for the plaintiff to plead facts "merely consistent" with the defendant's liability – "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009). Instead, a plaintiff must state enough facts to nudge his claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "A complaint is 'plausible on its face' if its factual allegations allow the court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Sch. Dist. No. 1*, 970 F.3d 1300, 1309 (10th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678).

### a.    The Court will not take Judicial Notice of the Body-Camera Footage.

Atoka requests the Court take Judicial Notice of the footage taken from both officers' body worn cameras with audio. (Docket Nos. 28 at 2-4). Atoka argues that a Court may take judicial notice of facts which are a matter of public record without converting a motion to dismiss to a motion for summary judgment. *Id.* citing *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 n.1 (10th Cir. 2004). While the Court is generally limited to reviewing the "four corners" of the pleadings on a motion to dismiss, the "district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). Despite Atoka's argument that Plaintiff "quotes from or references the footage content in at least eighteen paragraphs" of his Amended Complaint, the Court finds that Plaintiff does not reference the body-camera footage, make the contents of body-camera footage central to his claims, or attach anything related to the body-camera footage as an exhibit to his Amended Complaint. *See Walbridge v. City of Oilton, Oklahoma*, 785 F.Supp.3d 978, 989 (N.D. Okla. 2025). And while the

4

Court in *Walbridge* noted that a court may take judicial of facts which are a matter of public record, the Tenth Circuit has determined that "'those documents may only be considered to show their contents and not to prove the truth of the matters asserted therein.'" *Id.* (quoting *Tal v. Hogan,* 453 F.3d 1244, 1265 n.24 (10th Cir. 2006)). Because the Plaintiff has not incorporated the contents of the body-camera footage by reference nor made it central to his Amended Complaint, and because at this stage the Court's function is "to assess whether the Plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted," *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted), the Court declines to consider the body-camera footage in deciding the Motion to Dismiss. The Court will not convert Atoka's Motion to Dismiss into a Motion for Summary Judgment.

### b. Plaintiff has Stated a Plausible 42 U.S.C. § 1983 Municipal Claim

Section 1983 establishes civil liability against individuals who, acting under color of state law, deprive others of their "rights, privileges, or immunities secured by the Constitution" of the United States. 42 U.S.C. § 1983. This statutory mandate applies to municipalities whose employees, in their execution of a municipality's policy, practice, or custom, "whether made by its lawmakers or by those whose edicts or acts . . . represent official policy," inflict an injury on others, thereby depriving them of their constitutional rights. *Monell v. NYC Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). However, a municipality cannot be held liable under § 1983 based upon the doctrine of respondeat superior or vicarious liability. *Id.* at 694-95. In *Monell*, the Supreme Court held that a governmental entity is only liable under § 1983 when the constitutional injury can fairly be said to have been caused by that entity's own policies and customs. *Id.* at 694. The actions of the governmental entity must be the moving force behind the constitutional violation, *id.*, and governmental liability for a constitutional violation "attaches where - and only where" the entity

makes "a deliberate choice to follow a course of action . . . from among various alternatives." *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986). *Monell* requires Plaintiff to establish that a policy or custom of the City of Atoka exists and that it caused the alleged constitutional violations. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821-22 (1985).

It is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 408 (1997). The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. *Id*. Furthermore, "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id*. at 405.

Atoka asserts that Plaintiff's Amended Complaint "fails to identify any act or omission of Atoka that resulted in any violation of his constitutional rights." (Docket No. 28 at 8). The Court does not agree. The Tenth Circuit has held, in order to establish *Monell* liability, a plaintiff "must prove (1) official policy or custom[,] (2) causation, and (3) state of mind." *Hinkle v. Beckham Cty. Bd. of Cnty. Comm'rs,* 962 F.3d 1204, 1239 (10th Cir. 2020). A policy or custom may arise from "a formal regulation or policy statement, an informal custom that amounts to a widespread practice, decisions of municipal employees with final policymaking authority, ratification by final policymakers of the decisions of subordinates to whom authority was delegated, and the deliberately indifferent failure to adequately train or supervise employees." *Id.* at 1239-40 *(quoting Pyle v. Woods,* 874 F.3d 1257, 1266 (10th Cir. 2017)).

Plaintiff's Amended Complaint plausibly alleges municipal liability claims against Atoka under informal policies or customs and failure to train/supervise. In fact, Plaintiff alleges "an

6

affirmative link between the aforementioned excessive force utilized by [Defendant] Simpson, [Defendant] Smith's failure to intervene, and the . . . arrest of Plaintiff and the policies, practices and/or customs which the Atoka Police Department promulgated, created, implemented and/or possessed responsibility for." (Docket No. 20 at 6). Plaintiff additionally alleges Atoka "failed to adequately train and supervise its officers, including [Defendants] Smith and Simpson, with respect to, inter alia: use of force, de-escalation, the use of force continuum, use of force on a citizen, use of force during traffic stops, preventing another officer's use of excessive force, reporting suspected uses of excessive force, reasonable suspicion, probable cause, and how not to unreasonably delay a traffic stop." *Id.* Furthermore, Plaintiff alleges Atoka failed to train its officers on "shattering a driver's window, using OC spray, and dragging someone out of their vehicle . . . . how to effectively communicate with stopped motorists . . . . and the probable cause required to perform sobriety tests on stopped motorists." *Id.* at 7. Finally, Plaintiff alleges "there have been numerous other instances in which [Atoka police] officers used unreasonable excessive force on stopped motorists, like Plaintiff, who were accused of minor traffic citations or nonviolent misdemeanors, yet [Atoka] failed to discipline the officers involved and failed to provide remedial training" and that "Atoka had an established policy/practice/custom of unnecessarily escalating situations in which stopped motorists were, at worst, merely passively resisting orders." *Id.*

In viewing Plaintiff's allegations as true and construing the allegations most favorably to him, Plaintiff has alleged sufficient facts to allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged as required under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As Plaintiff correctly argues, a complaint "must identify an obvious and 'specific deficiency' that is 'closely related' to the plaintiff's injury," such that the municipality's failure "to train was 'deliberately indifferent' to the plaintiff's rights and the 'moving force' behind his

injury." *Schwartz for Estate of Finn v. City and County of Denver,* 2023 WL 1879305, at *4 (D. Colo. 2023) (quoting *Porro v. Barnes,* 624 F.3d 1322, 1328 (10th Cir. 2010)). The Court agrees Plaintif's Amended Complaint satisfies this pleading requirement. Accordingly, Atoka's Motion to Dismiss Plaintiff's municipal liability claim is DENIED.

### c.  Oklahoma State Law Tort Claims

As for the state law claims, Atoka argues that the Court should dismiss the federal municipal liability claims against Atoka and then decline to exercise its supplemental jurisdiction over this related state claim. (Docket No. 28 at 12). As noted above, the  Court does not agree the federal municipal liability claim should be dismissed. Atoka makes no further argument regarding any deficiencies relating to Plaintiff's state law tort claims.  Accordingly, Atoka's Motion to Dismiss Plaintiff's state law tort claims is DENIED.

### III.     Conclusion

Plaintiff has sufficiently alleged plausible claims for relief under the pleading standards established by *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*. Construing the allegations in the light most favorable to Plaintiff, the Amended Complaint contains specific factual allegations supporting municipal liability under 42 U.S.C. § 1983, including allegations of unconstitutional customs, policies, and failures to train and supervise that plausibly served as the moving force behind the alleged constitutional violations. The Court further declines to consider the officers' body-camera footage at the motion to dismiss stage because the footage was neither incorporated by reference nor central to Plaintiff's claims, and consideration of such evidence would improperly convert the motion into one for summary judgment. Additionally, because Plaintiff's federal municipal liability claims survive dismissal, there is no basis to decline supplemental jurisdiction

over Plaintiff's related Oklahoma state law tort claims. Accordingly, Atoka's Motion to Dismiss is DENIED in its entirety.

IT IS SO ORDERED this 16th day of June, 2026.

_____
D. Edward Snow
United States Magistrate Judge