**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF OKLAHOMA**

MICHAEL ROBERTS,                          )
                                          )
          Plaintiff,                )
                                          )
v.                                        )    Case No. 25-cv-218-DES
                                          )
CITY OF ATOKA, OKLAHOMA,                  )
DRAKE SMITH, and                          )
KODY SIMPSON,                             )
                                          )
          Defendants.               )

**OPINION AND ORDER**

This matter comes before the Court on Defendant Kody Simpson's ("Defendant Simpson")

and Defendant Drake Smith's ("Defendant Smith"), Motions to Dismiss Plaintiff's First Amended

Complaint, pursuant to Rule 12(b)(6). (Docket Nos. 25 & 26). For the reasons set forth below,

Defendants' Motions to Dismiss are GRANTED IN PART and DENIED IN PART.

**I.    Background**

On July 2, 2025, Plaintiff Michael Roberts ("Plaintiff") filed his Complaint alleging violations

of the United States Constitution, the Oklahoma Constitution, and Oklahoma law arising out of his

traffic stop and arrest in February of 2024. (Docket. No. 2). Plaintiff filed his First Amended

Complaint on August 29, 2025. (Docket No. 20). Plaintiff's First Amended Complaint alleges that,

at or around 4:30 pm on February 25, 2024, Plaintiff was pulled over by Drake Smith ("Defendant

Smith") for allegedly speeding. *Id.* at 2-3. Plaintiff provided Defendant Smith with his license and

proof of insurance as requested and remained calm and ordinary. *Id.* Plaintiff alleges Defendant

Smith returned to his patrol car to verify Plaintiff's documents, check for warrants, and determine

who owned the vehicle. *Id.* at 3. Dispatch reported to Defendant Smith that Plaintiff had no

warrants and that he owned the car. *Id.*  At this time, Kody Simpson ("Defendant Simpson")

1

arrived on the scene and, according to Plaintiff, despite finding nothing to justify an arrest or an extended detention, nonetheless suggested to Defendant Smith that he perform a Standard Field Sobriety Test on Plaintiff.[1]

Plaintiff alleges Defendant Simpson asked Defendant Smith if he smelled marijuana and Defendant Smith responded he did not. *Id.* at 3. Despite this, Plaintiff alleges the two officers approached either side of Plaintiff's car and Defendant Smith asked Plaintiff to step out of the car. *Id.* at 4. Plaintiff alleges the officers did not provide a reason why Plaintiff was being asked to step out of the car, but that Defendant Smith then asked Plaintiff if he had been smoking marijuana that day to which Plaintiff responded that he does not smoke. *Id.* Plaintiff then alleges Defendant Simpson unreasonably escalated the situation by walking to the driver's side door and reaching into the vehicle to open the door. *Id.* Plaintiff, fearing for his safety, rolled up the window and stopped three quarters of the way up. *Id.* Defendant Simpson then attempted to break Plaintiff's window by slamming his hand against the glass twice. *Id.* Plaintiff requested to speak to a supervisor, but Defendant Simpson reached into the vehicle again, grabbed his pepper spray canister and "held it directly in front of Plaintiff's face and doused him in pepper spray." *Id.*

According to Plaintiff, Defendant Simpson then instructed Defendant Smith to break the driver's side window and Defendant Smith complied by using his baton. *Id.* Defendant Simpson reached through the broken window, unlocked Plaintiff's door, and "grabbed Plaintiff by only his hair and pulled him bending his body significantly and attempting to drag him out of the car but was unsuccessful due to Plaintiff's seatbelt still being on." *Id.* at 5. After unbuckling the seatbelt, Defendant Simpson "for a second time grabbed Plaintiff solely by the hair and violently tugged, twisting Plaintiff's neck downward." *Id.* After Plaintiff was removed from the vehicle he was taken

---

[1] According to Defendant Smith, he observed Plaintiff as having glazed over eyes, slow reactions and irritation and irritability which is what led him want to perform the field sobriety test. (Docket No. 24 at 4).

to the Atoka County Jail but was not charged with any offense related to driving under the influence. *Id.* Plaintiff alleges that under the circumstances, the use of violent force on Plaintiff was objectively unreasonable and excessive. *Id.* at 6.

Defendants raise four (4) issues for the Court's consideration in their Motions to Dismiss Plaintiff's First Amended Complaint: (1) whether the Court should take Judicial Notice of the body-camera footage as a public record; (2) whether Plaintiff has adequately pled an excessive force claim against Defendant Simpson; (3) whether Plaintiff has adequately pled a failure to intervene claim against Defendant Smith; and (4) whether Plaintiff has adequality pled wrongful arrest. Furthermore, both Defendants raise qualified immunity. For the reasons set forth below, Defendants' Motions to Dismiss are GRANTED in part and DENIED in part.

## II.    Analysis

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Courts would generally embrace a liberal construction of this pleading requirement and allow complaints containing only conclusory allegations to move forward unless factual impossibility was apparent from the face of the pleadings. *Robbins v. Oklahoma* 519 F.3d 1242, 1246 (10th Cir. 2008). However, the United States Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), announced a new standard and held that to withstand a motion to dismiss, a complaint must contain enough allegations of fact to state a claim in which relief is plausible on its face. *Id* at 570. This does not mean all facts must be presented at the time of the complaint, but merely that the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Id.* at 555 (quotation omitted). Therefore, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the

3

line from conceivable to plausible." *Robbins,* 519 F. 3d at 1247. Courts are to construe the allegations of a complaint in a light most favorable to the Plaintiff; however, "the court will not read causes of action into the complaint which are not alleged." *Arnold v. City of Tulsa, Oklahoma*, No. 09CV811, 2010 WL 3860647, at *3 (N.D. Okla. Sept. 30, 2010) (quotation omitted).

It is not enough for the plaintiff to plead facts "merely consistent" with the defendant's liability – "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009). Instead, a plaintiff must state enough facts to nudge his claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "A complaint is 'plausible on its face' if its factual allegations allow the court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Sch. Dist. No. 1*, 970 F.3d 1300, 1309 (10th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678).

### a. The Court will not take Judicial Notice of the Body-Camera Footage.

Defendants request the Court take Judicial Notice of the footage taken from both officer's body worn cameras with audio. (Docket Nos. 24 & 26 at 3). Defendants argue that a Court may take judicial notice of facts which are a matter of public record without converting a motion to dismiss to a motion for summary judgment. *Id.* citing *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 n.1 (10th Cir. 2004). While the Court is generally limited to reviewing the "four corners" of the pleadings on a motion to dismiss, the "district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). Despite Defendants' argument that Plaintiff "quotes from or references the footage content in at least eighteen paragraphs" of his Amended Complaint, the Court finds that Plaintiff does not reference the body-camera footage, make the contents of body-camera footage central to

his claims, or attach anything related to the body-camera footage as an exhibit to his Amended Complaint. *See Walbridge v. City of Oilton, Oklahoma*, 785 F.Supp.3d 978, 989 (N.D. Okla. 2025). And while the Court in *Walbridge* noted that a court may take judicial of facts which are a matter of public record, the Tenth Circuit has determined that "'those documents may only be considered to show their contents and not to prove the truth of the matters asserted therein.'" *Id.* (quoting *Tal v. Hogan,* 453 F.3d 1244, 1265 n.24 (10th Cir. 2006)). Because the Plaintiff has not incorporated the contents of the body-camera footage by reference nor made it central to his Amended Complaint, and because at this stage the Court's function is "to assess whether the Plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted," *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted), the Court declines to consider the body-camera footage in deciding the Motions to Dismiss. The Court will not convert Defendants' Motions to Dismiss into Motions for Summary Judgment.

### b. Plaintiff has Stated a Plausible 42 U.S.C. § 1983 Excessive Force Claim

Excessive force claims arising under the Fourth Amendment must be analyzed under an objective reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 394–95 (1989). The question to be asked is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, and its calculus must embody an allowance for the fact that police officers are often forced to make split-second decisions about the amount of force necessary in a particular situation." *Id*. at 387. Under this test, the court considers the totality of the circumstances. *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014). In evaluating the totality of the circumstances, courts weigh three factors: 1 ) the severity of the crime at issue, 2) the immediate

5

threat that the suspect posed to officers and others, and 3) any active resistance or attempt to flee by the suspect. *Graham*, 490 U.S. at 396.

In the present case, both parties agree Plaintiff was stopped for a minor traffic violation. (Docket No. 26 at 10 and Docket No. 35 at 9). Furthermore, both parties agree that this minor offense supports only the use of minimal force. *See Perea v. Baca*, 817 F.3d 1198, 1203 (10th Cir. 2016) (noting that a "minor offense . . . support[s] the use of minimal force"). The Court therefore agrees the first factor weighs in favor of Plaintiff.

The second factor, immediate threat posed to the officers and others, "is undoubtedly the most important and fact intensive factor in determining the objective reasonableness of an officer's use of force." *Pauly v. White*, 874 F.3d 1197, 1216 (10th Cir. 2017) (quotation omitted). This factor looks at the immediate threat the suspect poses to officers and others. The Tenth Circuit has held "[u]nder the second factor, an officer may use increased force when a suspect is armed, repeatedly ignores police commands, or makes hostile motions towards the officer or others." *Donahue v. Wihongi*, 948 F.3d 1177, 1196 (10th Cir. 2020).

Defendants argue that Plaintiff ignored repeated requests by Officer Smith to get out of the car. (Docket No. 26 at 12). However, when looking at Plaintiff's Amended Complaint, there is no indication that Plaintiff posed an immediate threat to the officers or others, nor is there any indication that Plaintiff was hostile. (Docket No. 20 at 3). While Defendants argue that Plaintiff ignored police commands to get out of the vehicle, Plaintiff's Amended Complaint indicates that Plaintiff asked why he was being directed to exit the vehicle as such a command was unwarranted, which was when Defendant Simpson escalated the situation. *Id.* at 4. While Plaintiff partially rolled up his window during the interaction, Plaintiff was terrified for his safety and asked to speak with a supervisor. *Id.* Construing the facts most favorable to the Plaintiff, as the Court must do at this

6

stage, Plaintiff has sufficiently pled facts that state a claim in which relief is plausible on its face. Accordingly, at this stage the second factor weighs in favor of Plaintiff.

The third *Graham* factor is whether the suspect was actively resisting arrest or attempting to flee. There are no indications from the Amended Complaint or Defendants' Motions to Dismiss that Plaintiff was attempting to flee. While Defendants seem to allege that Plaintiff was actively resisting arrest, Plaintiff's Amended Complaint does not indicate Plaintiff was ever told he was under arrest. *Id.* Based on the facts presented in the Amended Complaint, Plaintiff was told to exit the vehicle without any explanation as to why or for what purpose; then, after being questioned about using marijuana and informing Defendant Smith that he does not smoke, Defendant Simpson escalated the situation by trying to open Plaintiff's door then, when unsuccessful, tried to break Plaintiff's window using his hand. *Id.* Plaintiff was "passively resisting – at most- for mere seconds" when Defendant Simpson began using force. (Docket No. 35 at 11). Under the totality of the circumstances and in viewing the facts most favorable to the Plaintiff, Plaintiff has sufficiently alleged that Defendant Simpson's use of force was excessive.

These facts, taken in context with the rest of the Plaintiff's Amended Complaint, present sufficient information to give fair notice to Defendants Smith and Simpson of the nature of the claims, and the grounds on which the claims rest. *Twombly*, 550 U.S. at 555. Furthermore, Plaintiff has alleged fact sufficient to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Accordingly, Defendants' Motions to Dismiss Plaintiff's 42 U.S.C. § 1983 Excessive Force Claims are DENIED.

### c.  Plaintiff has Stated a Plausible Failure to Intervene Claim

To state a failure to intervene claim, Plaintiff must allege that 1) a government officer violated his constitutional rights, 2) a different government actor (the defendant) observed or had

reasons to know about that constitutional violation, and 3) the defendant had a realistic opportunity to intervene but failed to do so. *See Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015); *Est. of Booker v. Gomez*, 745 F.3d 405, 422-23 (10th Cir. 2014). "[E]ven "if a single deputy's use of force was not excessive, 'a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983.'" *Krueger v. Phillips*, No. 24-7035, 2025 WL 2424209, at \*29 (10th Cir. Aug. 22, 2025) (quoting *Estate of Booker v. Gomez*, 745 F.3d 405, 422 (10th Cir. 2014)). This is true even where the officer does not "'actually participate in the use of excessive force,'" so long as the officer is "'present at the scene and…fails to take reasonable steps to protect the victim of another officer's use of excessive force.'" *Id.* (quoting *Mascorro v. Billings*, 656 F.3d 1198, 1204 n.5 (10th Cir. 2011)).

As noted above, the Court finds that Plaintiff has sufficiently pled an excessive force claim against Defendant Simpson. Plaintiff has further alleged that Officer Smith was present at all relevant times, including when Officer Simpson used excessive and unreasonable force and that Smith failed to take reasonable steps to protect Plaintiff from Officer Simpson's use of excessive and unreasonable force. (Docket No. 20 at 10). Accordingly, Plaintiff has sufficiently alleged a failure to intervene claim against Defendant Smith, and Defendants' Motions to Dismiss Plaintiff's failure to intervene claim are DENIED.

### d. Plaintiff's Wrongful Arrest Claim is Dismissed.

Plaintiff additionally alleges a wrongful arrest claim against Defendants Smith and Simpson. Both Defendants argue in their Motions to Dismiss that Plaintiff is collaterally estopped from arguing Defendant Smith and Defendant Simpson lacked probable cause to arrest him and that the arrest was proper. (Docket Nos. 24 at 9-13 and 26 at 14). Plaintiff concedes Defendants'

8

arguments; therefore, Defendants' Motion to Dismiss Plaintiff's Wrongful Arrest Claim are GRANTED.

### e. Defendants Are Not Entitled to Qualified Immunity at This Stage.

Finally, Defendants argue they are entitled to qualified immunity from Plaintiff's § 1983 claims based on qualified immunity. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). This doctrine is intended "to shield officials from harassment, distraction, and liability when they perform their duties reasonably," while also ensuring that officials who "exercise power irresponsibly" are held accountable. *Id.* Defendants are "entitled to qualified immunity unless it is demonstrated that their conduct violated clearly established constitutional rights of which a reasonable person in their positions would have known." *Murrell v. Sch. Dist. No. 1,* 186 F.3d 1238, 1251 (10th Cir. 1999). Defendants argue that since Plaintiff has failed to state a plausible § 1983 claim against them in their individual capacities, they are entitled to qualified immunity. (Docket Nos. 24 at 13 and 26 at 14).

"When qualified immunity is asserted in the context of a motion to dismiss, the factual allegations of the complaint are assumed to be true, and the court's analysis generally aligns with the analysis applied with determining the sufficiency of a claim." *Harper v. Woodward Cnty. Bd. of Cnty. Comm'rs,* No. CIV-11-0996-HE, 2014 WL 7399367, at *8 (W.D. Okla. Dec. 29, 2014) citing *Brown v. Montoya,* 662 F.3d 1152, 1162-64 (10th Cir. 2011) and *Iqbal*, 556 U.S. at 666, 673-75, 677-84.  The Court scrutinizes "the defendant's conduct as alleged in the complaint . . . for objective legal reasonableness" at the motion to dismiss stage.  *Turner v. Oklahoma Cnty. Bd. of*

*Cnty. Comm'rs,* No. 19-6092, 804 F. App'x 921, 924 (10th Cir. 2020) (unpublished). Thus, when a defendant raises a qualified immunity defense in response to a motion to dismiss, the court uses a two-part test to determine whether the plaintiff: (1) plausibly pleaded that the defendant violated a constitutional right, and (2) shows that the constitutional right was clearly established at the time of the defendant's alleged misconduct. *A.N. ex rel. Ponder v. Styling,* 928 F.3d 1191, 1196 (10th Cir. 2019). As indicated above, the Court finds that Plaintiff's allegations, if true, sufficiently state a plausible claim of excessive force under the Fourth Amendment and a plausible claim of failure to intervene. These allegations, if true, show actions that were unconstitutional under clearly established law.

In order for a law to be clearly established, "'there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains.'" *Est. of Booker,* 745 F.3d at 411 (quoting *Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008)). "[An officer's] conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable [officer] would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). A case directly on point is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* The Tenth Circuit has developed "'a sliding scale to determine when law is clearly established' in which '[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation.'" *Est. of Booker*, 745 F.3d 405 at 427 (quoting *Casey v. City of Federal Heights,* 509 F.3d 1278, 1284 (10th Cir. 2014).

Accepting the allegations as true and construing them in the light most favorable to the Plaintiff, the Court finds Plaintiff has sufficiently alleged conduct that would violate a Fourth Amendment right that was clearly established in February 2024.  Therefore, Defendants' Motions to Dismiss based on qualified immunity are DENIED.

### III.    Conclusion

Construing the allegations in the light most favorable to Plaintiff, the Court concludes that Plaintiff has plausibly stated claims under 42 U.S.C. § 1983 for excessive force against Defendant Simpson and for failure to intervene against Defendant Smith, and that Defendants are not entitled to qualified immunity at this stage. However, Plaintiff's wrongful arrest claim is dismissed based on his concession and the applicability of collateral estoppel. Additionally, the Court declines to take judicial notice of the body camera footage at the motion to dismiss stage. Accordingly, Defendants' motions to dismiss are GRANTED IN PART as to the wrongful arrest claim and DENIED IN PART as to the excessive force, failure to intervene claims and qualified immunity.

IT IS SO ORDERED this 17th day of June, 2026.

_____
D. Edward Snow
United States Magistrate Judge

11